## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SWERVE IP, L.L.C. AND ) | |
| SWERVE, L.L.C. ) | |
| Plaintiffs, ) | CIVIL NO. |
| ) | |
| v. ) | SECT. "", MAG. |
| ) | |
| CATHERINE WILBERT AND ) | |
| THE WILBERT COMPANIES ) | |
| ) | |
| Defendants, ) | |
| ) | |

## VERIFIED COMPLAINT FOR VIOLATIONS OF TRADEMARK
## RIGHTS AND BREACHES OF CONTRACT

Plaintiffs, Swerve IP, L.L.C. ("SIP") and Swerve, L.L.C. ("Swerve") (collectively the "Swerve Companies"), Louisiana limited liability companies whose principal places of business are in Jefferson Parish, Louisiana, file this Verified Complaint and aver as follows:

1.

### SYNOPSIS

Defendant Catherine Wilbert created a sugar-free, all-natural sweetener that she named "Swerve".  Wilbert incorporated Swerve into consumable and nutritional products sold by the Wilbert Companies Defendants from January, 2001 to February, 2011.  Wilbert protected the confidentiality of the proprietary information about Swerve through numerous confidentiality agreements with manufacturers and distributors of her companies' products.  In 2009, Wilbert obtained additional protection for Swerve by registering the Swerve™ trademark.  On February

14, 2011, Wilbert entered into a series of contracts whereby she: sold all interests in Swerve[TM] to the Swerve Plaintiffs; committed to keeping all formula-related information confidential; and promised not to compete with or develop similar products using Swerve's[TM] key ingredients; or develop a like sweetener that mimics Swerve's[TM] properties.   Defendants Wilbert and the Wilbert Companies also entered into a Product Supply Agreement allowing Defendants to continue to use Swerve[TM] in their products, at a discounted, wholesale price, on the condition that Defendants would not make bulk sales to third parties.  Defendant Wilbert and the Wilbert Companies violated every single one of these agreements and put Plaintiffs' trademark at risk.

On December 20, 2012, Plaintiffs Swerve sent Defendants a cease and desist letter, and notice of termination of the Product Supply Agreement.  Defendants refuse to cease.  Defendants have continued to market Swerve[TM] on their websites, to sell Swerve[TM] to third-party distributors and to individuals who purchase online, and to blend Swerve[TM] key ingredients into products sold by Defendants Wilbert and the Wilbert Companies.  Defendant Wilbert directed the Wilbert Companies Defendants to violate the Federal trademark laws and her contracts with the Plaintiffs.   The Swerve Plaintiffs seek to enforce their exclusive rights to the Swerve[TM] trademark; to enjoin the Defendants from advertising, selling, using and blending Swerve[TM] sweetener; and for damages resulting from Defendants' willful, wanton, and reckless breaches of the Contracts with Plaintiffs.

**2.**

**<u>PARTIES</u>**

Made Defendants herein are:

A.   Catherine Ann Wilbert, individually, a person of the full age of majority domiciled in St. Tammany Parish, Louisiana and who is also doing business as Vitality Juice, Java and Smoothie Bar, also in St. Tammany Parish, Louisiana;

B.   Dr. C's Natural Wellness, L.L.C. ("Dr. C's Natural Wellness"), a Louisiana limited liability company with its principal place of business in St. Tammany Parish, Louisiana;

C.   Vitality Blends, L.L.C. ("Vitality Blends"), a Louisiana limited liability company with its principal place of business in St. Tammany Parish, Louisiana;

D.   PCF Enterprises, L.L.C. f/k/a Phytoceutical Formulations, L.L.C. ("PCF"), a Louisiana limited liability company with its principal place of business in St. Tammany Parish, Louisiana;

E.   Wellness Innovations & Nutrition Company, L.L.C. d/b/a The Nutrition Company ("The Nutrition Company"), a Louisiana limited liability company with its principal place of business in St. Tammany Parish, Louisiana;

F.   Wellness Concepts, L.L.C. ("Wellness Concepts"), a Louisiana limited liability company with its principal place of business in St. Tammany Parish, Louisiana;

G.   Wellness Holdings, L.L.C. ("Wellness Holdings"), a Louisiana limited liability company with its principal place of business in St. Tammany Parish, Louisiana; and

H.   Nutri-Sport of Mandeville, L.L.C. ("Nutri-Sport"), a Louisiana limited liability company with its principal place of business in St. Tammany Parish, Louisiana.

The companies identified above in B through H are collectively referred to as the "Wilbert Companies". Based upon information and belief, Defendant Wilbert is the sole officer/member/owner of each of the Wilbert Companies.

**3.**

## JURISDICTION

This Court has jurisdiction over this case pursuant to 28 U.S.C. §1338 because this action arises under an Act of Congress relating to trademarks (15 U.S.C. § 1051 *et seq.*) and because this action also asserts a claim of unfair competition.

**4.**

## VENUE

Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant Wilbert resides in this judicial district, because the Wilbert Companies Defendants each have their

4

principal place of business in this district, and because a substantial part of the events and omissions giving rise to Swerve Companies' claims occurred in this district, all as outlined below.

**5.**

## FACTS

The Swerve Plaintiffs produce and market Swerve[TM] sweetener, which is an all-natural, zero-calorie sweetener made from a unique combination of ingredients derived from fruits and vegetables, including erythritol, oligosaccharides and natural flavors. The precise formula is a confidential, trade secret. Wilbert created the formulation of Swerve sweetener and first began using Swerve sweetener in commerce at least as early as January 12, 2001.

**6.**

Defendant Wilbert established and registered several companies (the Wilbert Company Defendants) in Louisiana to produce and market numerous products, including Swerve[TM] sweetener.

**7.**

In order to protect the confidentiality of proprietary information of their products, including Swerve[TM] sweetener, Defendant PCF Enterprises ("PCF") and/or Defendant Wilbert entered into at least 9 confidentiality/limited use/non-disclosure agreements with manufacturers and distributors of these products.

**8.**

To provide stronger protection for Swerve sweetener, Defendant Wilbert applied for a trademark with the United States Patent and Trademark Office on February 26, 2009. The trademark for Swerve[TM] was registered on September 8, 2009.

**9.**

On April 23, 2010, Defendants PCF and Nutri-Sport borrowed money from Richard D. Farrell and signed a Commercial Line of Credit Promissory Note and Commercial Security Agreement for this loan.

**10.**

On June 11, 2010, Farrell established and registered Swerve, L.L.C. as a limited liability company in Louisiana.

**11.**

On December 23, 2010, Farrell established and registered Swerve IP, L.L.C. as a limited liability company in Louisiana.

**12.**

On February 14, 2011, Wilbert and Farrell entered into a transaction via several contracts concerning the transfer of all of the rights and property of Swerve[TM] from Defendants Wilbert and the Wilbert Companies to the Swerve Plaintiffs. As part of the transaction transferring property and rights of Swerve, the following documents were executed.

- Certificate of Company Authority and Representations (attached as Exhibit 1), signed by

  Catherine Wilbert, certifying, among other things, that:

  → Catherine Wilbert is the sole limited liability company manager and/or member of 100% of each of the Wilbert Companies.  Each Wilbert Company has Articles of Organization filed with the Louisiana Secretary of State.

  → Catherine Wilbert has the requisite power, authority and capacity to complete the Transaction and to make the representations and warranties made in the Transaction Documents.

  → The Transaction Documents to which either Catherine Wilbert or any Wilbert Company is a party (i) have been duly authorized, executed and delivered by all requisite corporate action by such Wilbert Company or by Catherine Wilbert (as appropriate) and (ii) constitute the legal, valid, and binding obligations of such Wilbert Company and Catherine Wilbert, enforceable against each of such Wilbert Company and Catherine Wilbert in accordance with their respective terms.

  → Upon closing of the Transaction, Swerve IP, L.L.C. and Swerve, L.L.C., as applicable, will have good and marketable title, free of all liens and encumbrances, in the Assets.

  → Catherine Wilbert solely and in her personal capacity owns all rights and titles to and interests in the intangible or tangible property that is the subject of the Transaction, including but not limited to Swerve[TM] brand sweetener, Zeratol and the other Assets, and has the rights and powers to transfer same as provided in the Transaction Documents.

- Act of Assignment and Capital Contribution and Business Transfer Agreement (Swerve

  IP, L.L.C.) (attached as Exhibit 2) in which, among other things, Wilbert:

  → received 10% of all interests in Swerve IP, L.L.C.;

  → granted and transferred into Swerve IP, L.L.C. the goodwill and reputation of and all of her rights and interests in Swerve[TM], Zeratol, or any proprietary blend of ingredients used to formulate the brand sweetener Swerve[TM], all tangible and intangible property of any kind used in any means in connection with the formulation, testing, production or marketing of Swerve[TM] brand sweetener;

&rarr; recognized that the formulation, know how, production formulations, production methodology, manufactured product, primary ingredients and other intellectual property constituting Swerve[TM] brand sweetener are "trade secrets"; and

&rarr; represented and warranted that she would not use or blend, in any way, any of the individual ingredients of Swerve[TM] brand sweetener in order to create a product sufficiently similar to Swerve[TM] brand sweetener as to compete with Swerve[TM] brand sweetener.

- Assignment of Trademarks and Goodwill (attached as Exhibit 3).

     &rarr; Catherine Wilbert irrevocably assigned to Swerve IP, L.L.C. all right, title and interest in and to the trademarks for Swerve[TM] and Zeratol, and registration therefore, for the United States of America and throughout the world together with the goodwill of the business in connection with which these trademarks are used and which is symbolized by these trademarks, along with the right to recover for damages and profits for past infringements thereof.

- Act of Assignment and Capital Contribution and Business Transfer Agreement (Swerve, L.L.C.) (attached as Exhibit 4) in which, among other things, Wilbert:

     &rarr; received 10% of all interests in Swerve, L.L.C. and

     &rarr; agreed to negotiate with Swerve, L.L.C. to perform services for Swerve, L.L.C.

     &rarr;

- Product Supply Agreement between the Swerve Plaintiffs and Wilbert, and some of the Wilbert Companies Defendants (attached as Exhibit 5). The agreement, among other things, provides:

     &rarr; "Wilbert Companies" in the agreement is defined to be Phytoceutical Formulations, L.L.C., Wellness Innovations, L.L.C., Vitality Blends, L.L.C., and Nutri-Sport of Mandeville, L.L.C.

     &rarr; Wilbert Companies agreed that any Swerve[TM] sweetener purchased from Swerve, L.L.C. would be solely utilized as an ingredient in a product manufactured or processed by the Wilbert Companies for resale or retail and that the resale of Swerve[TM] sweetener that is not used as an ingredient of a product manufactured or

processed by the Wilbert Companies is forbidden without the express written consent of Swerve, L.L.C.

→ All parties agreed that this Agreement did not vest any ownership interest in Swerve[TM] sweetener or the name Swerve[TM] in Catherine Wilbert or any of the Wilbert Companies or any interest in the processes, formulas, ingredients, product specifications, trade practices, trade secrets and other information relating to Swerve[TM] sweetener, and at all times such rights remain vested in Swerve, I.P., L.L.C.

→ Wilbert and the Wilbert Companies are specifically prohibited from blending or using in any way, any of the individual ingredients of Swerve[TM] sweetener in order to create a product sufficiently similar to Swerve[TM] sweetener as to compete with Swerve[TM] sweetener.

→ Wilbert and the Wilbert Companies agreed to keep confidential and secret all Confidential Information, including licenses, know-how, materials, formula, designs, trade secrets, customers, marketing plans, and client information.

→ If Wilbert or any Wilbert Company breaches the Confidentiality provisions of this Agreement, Swerve, L.L.C. may enforce its rights by seeking injunctive relief in any court of competent jurisdiction.  Catherine Wilbert and the Wilbert Companies acknowledge that remedies of law are inadequate to protect against breach of the Confidentiality provisions of this Agreement and hereby agree in advance to the granting of injunctive relief in favor of Swerve, L.L.C. without proof of actual damages.

- Confidentiality Non-Disclosure and Non-Use Agreement By and Between Swerve IP, L.L.C. and Catherine A. Wilbert (attached as Exhibit 6).

  → Wilbert assigned to Swerve IP, L.L.C. all of her and their rights to confidential information relating to Swerve[TM] brand sweetener and she agreed to not use, communicate or disclose any confidential information in any manner whatsoever.

  → "Confidential information" is defined to include all information relating to Swerve[TM] brand sweetener, any proprietary blend of ingredients used to formulate the brand sweetener Swerve[TM], trade secrets, all formulas and recipes, all technical knowledge, proprietary information, technology, customer lists, website names and domains, financial and marketing information, production formulations, production methodology, strategies, manufactured product, primary

ingredients and branding required to produce and market Swerve$^{TM}$ brand sweetener.

→ Any and all inventions, improvements, formulae, and trade secrets made by Wilbert during the period Wilbert is either a member of Swerve IP, L.L.C. or for a period of 24 months following termination of such relationship, shall be disclosed by Catherine Wilbert to Swerve IP, L.L.C. or shall be the exclusive property of Swerve IP, L.L.C. as against Wilbert.

→ Wilbert agreed that she would not use in any nutritional or consumable product any formulation that mimics the Swerve$^{TM}$ sweetener formulation or its properties.

→ Wilbert agreed that Swerve IP, L.L.C. will be irreparably injured in the event of a breach by Catherine Wilbert of any of her obligations under this Agreement and that Swerve IP, L.L.C. would be entitled to injunctive relief to prevent or curtail any breach of this agreement by Wilbert.

- Confidentiality Non-Disclosure and Non-Use Agreement By and Between Swerve, L.L.C. and Catherine A. Wilbert (attached as Exhibit 7). Other than the assignment of rights, this Agreement has the same operative provisions as the Confidentially Agreement between Swerve IP, L.L.C. and Wilbert.

- Operating Agreement of Swerve IP, L.L.C., signed by Wilbert (as Member) and Farrell (as Manager and Member) (attached as Exhibit 8). The agreement provides, in part, that:

    → Wilbert received a 10% interest in SIP.

    → Each Member's interest in Swerve IP, L.L.C. shall be personal property for all purposes and not an ownership interest in any Swerve IP, L.L.C. property.

    → Each Member shall keep confidential and shall not, without the prior written consent of the Manager, use or disclose to others (and shall use its best and reasonable efforts to prevent any person to whom that Member is related or affiliated, including their employees, agents and representatives, from disclosing to others) any confidential information.

→ Confidential information is any data, documents or information in any form which pertains to this Agreement, any negotiations pertaining thereto, any of the transactions contemplated hereby, or the past, present or future business of Swerve IP, L.L.C., or pertains to information of Swerve IP, L.L.C. which the Manager has designated as confidential.

→ Each Member shall execute and be bound by the terms of a written confidentiality non-disclosure and non-use agreement.  The Confidentiality Agreements executed by Catherine Wilbert and Richard Farrell each dated February 14, 2011, are made part of this Agreement

→ Any party to the agreement may seek appropriate injunctive relief in any court for any threatened breach of this Agreement.

- Amended and Restated Operating Agreement of Swerve, L.L.C., signed by Wilbert (as Member) and Farrell (as Manager and Member) (attached as Exhibit 9).  This agreement has the same operative terms as the Operating Agreement of Swerve IP, L.L.C.

### 13.

On February 13, 2012, Defendant Wilbert sold her 10% interest in both Swerve IP, L.L.C. and Swerve L.L.C. (Membership Unit Purchase Agreement attached as Exhibit 10).  In this agreement:

→ The sections of the Operating Agreements regarding confidentiality survive the Closing and shall remain in full force and effect.

→ The Confidentiality Non-Disclosure and Non-Use Agreements between Swerve IP, L.L.C. and Catherine A. Wilbert and between Swerve, L.L.C. and Catherine A. Wilbert, dated February 14, 2011, survive the Closing and shall remain in full force and effect.

Defendant Wilbert resigned her positions as Member of the Board for Swerve, L.L.C., Member of the Board for Swerve IP, L.L.C., and her employment at Swerve, L.L.C. and Swerve IP, L.L.C.

**14.**

Pursuant to the Product supply Agreement, Defendant, The Nutrition Company, purchased Swerve™ sweetener from Swerve, L.L.C. in eighteen (18) transactions between April 12, 2011 and October 18, 2012.  These purchases included Swerve™ granular packets, 1 lb. bags, 3 lbs. bags and 25 lbs. bags and Swerve™ confectioner 1 lb. bags and 22 lbs. bags.  The total purchase price was $5,143.18 for approximately 1,280 lbs. of sweetener.  This is an insufficient amount of Swerve, and in the wrong packaging, for any of the Defendants to use these purchases to include in the production of the nutritional and consumable products produced by Defendants.

**15.**

Nevertheless, based upon information and belief, Wilbert and the Wilbert Companies continue to use the Swerve™ trademark on Defendants' product labels.  Plaintiffs did not authorize Defendants to use their confidential and trade secret information about Swerve's formula.  Plaintiffs did not authorize Defendants to use key Swerve ingredients or mimic Swerve's properties. Plaintiffs did not authorize Defendants to manufacture or blend Swerve™ and use it in Defendant's products.

**16.**

In October 2012, Plaintiffs learned that Defendant Nutrition Company sold Swerve™ sweetener to four retail stores (Whole Food Market) in the Rocky Mountain region at wholesale prices, without Plaintiffs' authorization.

**17.**

In November, 2012, the Swerve Plaintiffs learned that The Nutrition Company sold Swerve™ at wholesale prices to a retail store in Red Deer, Alberta, Canada called Sugar-Free and More, without Plaintiffs' authorization.

**18.**

On December 14, 2012, Swerve, L.L.C. received an email from an individual who stated:

> "I recently placed an order on amazon.com for 1 lb. of Swerve Sweetener.  I thought I was purchasing directly from you but inadvertently ordered from seller 'The Nutrition Company'.  The product arrived in a clear plastic bag with a note from Lauren Raye, Director of Operations, Phytoceutical Formulations stating that the 1 lb. retail bags have sold out and they filled my order from their bulk inventory ...  The bag had a slit in the bottom causing the product to spill out into the shipping container."

Swerve Plaintiffs did not authorize Defendants Wilbert or the Wilbert Companies to sell Swerve™ sweetener on Amazon.com; to sell retail bags of Swerve™ sweetener at wholesale prices; to sell Swerve™ sweetener from bulk inventory; to sell Swerve™ sweetener in clear plastic bags; to sell Swerve™ sweetener in damaged and leaking packaging; or to sell product without proper and legally-required labeling.

**19.**

In December 2012, the Swerve Plaintiffs learned that the Wilbert Companies Defendants continue to use third-parties to blend the constituents of Swerve™ sweetener or key ingredients of Swerve™ into products marketed by the Wilbert Companies, without Plaintiffs' authorization.

**20.**

On December 20, 2012, counsel for the Swerve Plaintiffs sent Defendants Wilbert and the Wilbert Companies a trademark Cease and Desist letter and notice of termination of the Product and Supply Agreement.  A copy of the trademark registration for Swerve $^{TM}$ sweetener was attached to the December 20, 2012 letter (attached as Exhibit 11).

**21.**

After receiving the Cease and Desist letter, Plaintiffs and Defendants attempted to negotiate a Termination Agreement and Sworn Statement whereby the Defendants would comply with the Cease and Desist demands and terminate the Product Supply Agreement.  However, during negotiations, it became clear that Defendants would not comply with the cease and desist demands.  Defendants refused to sign the termination agreement.

**22.**

Upon information and belief, Wilbert owns and operates a store named "The Nutrition Company," located at 4350 Highway 22 in Mandeville, Louisiana,  On April 5, 2013, while in Wilbert's store, The Nutrition Company, an employee indicated that Swerve $^{TM}$ sweetener is contained in the Wilbert developed products OPTIPRO and OPTICLA. The same employee explained that "Swerve" was used in cupcakes sold at the store as well.  Also, on April 5, 2013, a white powder represented by an employee to be "Swerve" was sold in bulk from the Nutrition Company store located at 4350 Highway 22 in Mandeville, Louisiana.

**23.**

On April 23, 2013, while in her store named "The Nutrition Company," located at 4350 Highway 22 in Mandeville, Louisiana, Wilbert openly represented that she used Swerve $^{TM}$ in everything she made in her store.  On April 23, 2013, the Swerve $^{TM}$ trademark/logo was displayed prominently in The Nutrition Company store advertising that Swerve $^{TM}$ sweetener is contained in the products being sold there.  Based upon the volume of Wilbert's and the Wilbert companies' purchases of Swerve $^{TM}$ sweetener to date, it would be impossible for Wilbert or the Wilbert companies to use  Swerve $^{TM}$ in all of its products without blending or manufacturing Swerve $^{TM}$ sweetener in violation of the Agreements at issue, including the Product Supply Agreement between Plaintiffs and Wilbert and certain Wilbert companies.   Also, on April 23, 2013, Wilbert sold Swerve $^{TM}$ sweetener in bulk in a plastic unmarked bag in violation of her agreements at issue, including the Product Supply Agreement. When asked how much Swerve $^{TM}$ sweetener she sold, Wilbert replied "tons."  All of the aforementioned facts evidence violation of the trademark registration and the various agreements entered into by Wilbert and the Wilbert Companies.  Said violations occurred on April 23, 2010, several months after the December 20, 2012 Trademark Cease and Desist  letter was sent and received by Wilbert.  Although being sent a Cease and Desist letter, and discussions ensued thereafter, Wilbert and the Wilbert companies continue to violate the agreements at issue and the rights of Plaintiffs pursuant to the trademark registration.

## FIRST CLAIM FOR RELIEF

## Violation of Federal Trademark Law of 1946, As Amended

**24.**

Swerve Companies incorporate each and every allegation contained in paragraphs 1 through 23 above as though fully set forth herein.

**25.**

The Trademark Act of 1946, as amended, ("the Trademark Act") (15 U.S.C. § 1051, *et seq.*) provides the Federal requirements for registration of a trademark with the United States Patent and Trademark Office and provides remedies for the infringement of registered trademarks.

**26.**

Pursuant to 15 U.S.C. § 1114, Defendants Catherine Wilbert and the Wilbert Companies are liable in a civil action by the owner of the Swerve$^{TM}$ trademark, Swerve IP, L.L.C., for the remedies provided in the Trademark Act.  Defendants are liable under § 1114(a) because the Defendants, without the consent of Swerve IP, L.L.C., have used and are using in commerce a reproduction of a registered mark (Swerve$^{TM}$) in connection with the sale, offering for sale, distribution and advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.  Defendants are liable under § 1114(b) because the Defendants, without the consent of Swerve IP, L.L.C., have reproduced, counterfeited, copied and/or colorably imitated a registered mark (Swerve$^{TM}$) and applied such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection

with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

**27.**

Pursuant to 15 U.S.C. § 1115, the Swerve[TM] trademark registered with the United States Patent and Trademark Office and owned by Swerve IP, L.L.C. shall be admissible in evidence and shall be *prima facie* evidence of the validity of the registered mark, of the registration of the mark, of Swerve IP, L.L.C.'s ownership of the mark, and of Swerve IP, L.L.C.'s exclusive right to use the registered mark in commerce or in connection with the goods or services specified in the registration.

**28.**

Pursuant to 15 U.S.C. § 1116, this Court has the power to grant injunctive relief to prevent the violation of any right of the owner of the registered trademark Swerve[TM] or to prevent a violation under subsections (a), (b), and/or (c) of 15 U.S.C. § 1125, as pled below. This Court also has the power, pursuant to § 1116, to order the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.

**29.**

Pursuant to 15 U.S.C. § 1117(a), because the Defendants have violated the rights of Swerve IP, LLC with respect to Swerve[TM], and have violated 15 U.S.C. § 1125(a), as pled below, Swerve Companies are entitled to recover (1) the profits of Defendants Catherine Wilbert and the

Wilbert Companies for infringement of the Swerve$^{TM}$ trademark, (2) damages sustained by Swerve Companies, and (3) the costs of this action.  The Court may enter judgment for any sum above the amount found as actual damages, not exceeding three times such amount. If the Court shall find that the amount of the recovery based on profits is either inadequate or excessive the Court may in its discretion enter judgment for such sum as the court shall find to be just.  And, due to the exceptional nature of this case, this Court may and should award attorney's fees to Plaintiffs.

30.

Pursuant to 15 U.S.C. § 1117(b)(1), because Defendants are liable under 15 USC § 1114(1)(a), this Court may enter judgment for three times the profits or damages, together with a reasonable attorney's fee, because one or more of the violations consisted of the Defendants Catherine Wilbert and the Wilbert Companies intentionally using a Swerve$^{TM}$ mark knowing that this mark is a counterfeit of the Swerve$^{TM}$ trademark, in connection with the sale, offering for sale, and distribution of goods or services.  Treble damages and attorney's fees are also owed under § 1117(b)(2) because Defendants provided, provide, and/or will provide in the future goods or services necessary to the commission of a violation described in this paragraph, with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.  This Court may also award prejudgment interest on this amount.

31.

Pursuant to 15 U.S.C. § 1117(c) and (d), Swerve Companies may elect, at any time before final judgment is rendered by this Court, to recover an award of statutory damages,

because this case involves the Defendants' willful and intentional use of a counterfeit of the Swerve™ trademark in connection with the sale, offering for sale, and distribution of goods.

**32.**

Pursuant to 15 U.S.C. § 1118, this Court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the Swerve™ trademark be destroyed.  Further, due to the willful misconduct of Defendants, this Court may order that the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

**33.**

Pursuant to 15 U.S.C. § 1121, the district and territorial courts of the United States shall have original jurisdiction of all actions arising under the Trademark Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

**34.**

Pursuant to 15 U.S.C. § 1125(a), Defendants Catherine Wilbert and the Wilbert Companies are liable in a civil action by the Swerve Companies because the Defendants have damaged, and will continue to damage Plaintiffs, by Defendants' use in commerce the word, term, name, symbol, and/or device for Swerve™ which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of the Defendants with the Swerve Companies, and as to the origin, sponsorship, or approval of the Defendants' goods by

the Swerve Companies.  Defendants are further liable under this Section because they have, in commercial advertising or promotion, misrepresented the nature, characteristics, qualities, or geographic origin of Defendants' or Plaintiffs' goods, services, or commercial activities.

### 35.

Pursuant to 15 U.S.C. § 1125(c), the Defendants Catherine Wilbert and the Wilbert Companies are liable in a civil action by Swerve Companies for dilution by blurring or dilution by tarnishment of the Swerve$^{TM}$ trademark caused by the actions of these Defendants and Plaintiffs are entitled to injunctive relief pursuant to this Section.

### 36.

The actions of the Defendants described in the paragraphs above are the violations of the Trademark Act for which the Defendants are liable to the Plaintiffs, Swerve Companies.  It is anticipated that additional violations will be identified in the formal discovery process.

### 37.

All misconduct of Defendants herein, in violation of the trademark act, was willful, intentional, reckless, and without any regard for the rights of the Plaintiffs.

## SECOND CLAIM FOR RELIEF

### Louisiana Trade Secrets Act

### 38.

Swerve Companies incorporate each and every allegation contained in paragraphs 1 through 37 above as though fully set forth herein.

**39.**

The confidential and proprietary information and trade secrets about Swerve[TM], of which the Defendants had knowledge, constitute trade secrets under the Uniform Trade Secrets Act, La. R.S. 51:1431 *et seq.* Such information, including a formula, pattern, compilation, program, device, method, technique, or process, has independent economic value, actual and/or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and was and continues to be the subject of efforts reasonable under the circumstances to maintain its Confidentiality. Such information was secured by years of business efforts and marketing and the expenditure of time and money. Such information is not available as general knowledge in the business in which Swerve Companies are engaged.

**40.**

Further, by the express terms of the Confidentiality Agreements executed by Defendant Wilbert, all information concerning Swerve[TM] learned by Wilbert before and in the course of her membership in Swerve Companies is deemed to be proprietary by the terms of these Confidentiality Agreements and Defendant Wilbert agreed to not use or disclose such information.

**41.**

Further, by the express terms of the Product Supply Agreement executed by Defendants Wilbert and the Wilbert Companies, the Defendants agreed to keep confidential and secret all confidential information concerning Swerve[TM].

**42.**

In order to unfairly compete with Swerve Companies, the Defendants knowingly and wrongfully received and made use of Swerve Companies' trade secrets, even though the Defendants had a duty to maintain the secrecy of such trade secrets and a duty of loyalty to act in the best interests of Swerve Companies and not in their own best interests.

**43.**

Defendants have "misappropriated" Swerve Companies' trade secrets as defined in La. R.S. § 51:1431(2), by disclosing and using Plaintiffs' trade secrets without express or implied consent when Defendants knew at the time of disclosure that it owed duties of confidentiality and secrecy to Plaintiffs, pursuant to all Agreements described herein.

**44.**

The actions of Defendants in misappropriating Swerve Companies' trade secrets in furtherance of their own businesses have damaged Swerve Companies in an amount to be proven at trial.

**45.**

Upon information and belief, one or more of Defendants remain in wrongful possession of Swerve Companies' confidential and proprietary trade secrets.

**46.**

There is a substantial risk that Defendants will inevitably misappropriate and/or continue to misappropriate Swerve Companies' trade secrets to the detriment and irreparable harm of Swerve Companies unless such actions are preliminarily and permanently enjoined, pursuant to

La. R.S. § 51:1432.   Also pursuant to this statute, in light of the intentional and willful misconduct described herein, this Court can and should order affirmative acts to be fulfilled by Defendants to protect Plaintiffs' trade secrets.

**47.**

Swerve Companies have no adequate remedy at law because once such trade secrets are divulged; they will lose much of their value.

**48.**

Under the Uniform Trade Secrets Act, Swerve Companies are entitled to damages and to have the misappropriation of their trade secrets enjoined in order to eliminate the commercial advantage which the Defendants will otherwise inevitably realize from the misappropriation.  In addition, Swerve Companies are entitled to such other affirmative relief as may be ordered by the Court to protect Swerve Companies' trade secrets, and an injunction prohibiting the Defendants from competing against Swerve Companies.

**49.**

In addition to injunctive relief, La. R.S. 51:1433 entitles Swerve Companies to recover damages for the actual loss caused by the misappropriation of their trade secrets.

**50.**

In addition to injunctive relief and damages for actual loss, La. R.S. 51:1433 entitles Swerve Companies to recover damages for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

**51.**

Plaintiffs are due reasonable attorney's fees in pursuing this action, due to Defendants' willful and malicious misappropriation of Swerve Companies' trade secrets.

**52.**

The acts referenced above bind the Defendants identified in this cause of action jointly, severally, and solidarily.

## THIRD CLAIM FOR RELIEF

### Louisiana Unfair Trade Practices and Consumer Protection Law

**53.**

Swerve Companies incorporate each and every allegation contained in paragraphs 1 through 52 above as though fully set forth herein.

**54.**

Upon the termination of her membership in the Swerve Companies, and pursuant to her Confidentiality Agreements, the Defendant Catherine Wilbert was required to maintain and preserve as confidential, and not use for her or any third party's benefit, any confidential and

proprietary information of Swerve Companies which she learned before and during the course of her membership in Swerve Companies.

**55.**

Pursuant to the Product Supply Agreement executed by Defendant Wilbert, individually and for the Wilbert Companies, the Defendants were required to keep confidential and secret all confidential information concerning Swerve$^{TM}$.

**56.**

In violation of the confidentiality provisions of her Confidentiality Agreements, Defendant Wilbert has used and/or will inevitably use Swerve Companies' confidential and proprietary business information and trade secrets to the benefit of the Defendants.

**57.**

Defendants wrongfully and without authorization converted to their own use Swerve Companies' confidential and proprietary business information and trade secrets, and upon information and belief continue to use same and/or will inevitably use same, without the written consent of Swerve Companies.

**58.**

Defendants have utilized and/or will inevitably utilize Swerve Companies' confidential and proprietary business information and trade secrets to the detriment of Swerve Companies.

**59.**

The use by Defendants of Swerve Companies' confidential and proprietary business information and trade secrets was, and is, deliberate and willful.

**60.**

The use of Swerve Companies' confidential and proprietary business information and trade secrets by Defendants was undertaken to misappropriate the benefits of such confidential and proprietary business information and trade secrets and goodwill to the Defendants.

**61.**

The use of Swerve Companies' confidential and proprietary business information and trade secrets by the Defendants constitutes conduct contrary to Swerve Companies' best interests in using the information by blending and selling competing products of Swerve Companies.

**62.**

In utilizing Swerve Companies' confidential and proprietary business information and trade secrets for the benefit of themselves, the Defendants have engaged in an unfair method of competition and an unfair practice in the conduct of trade and commerce, all in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 *et seq.*

**63.**

In breaching their agreements with Swerve Companies, Defendants engaged in unfair competition and unfair practices by not acting in the best interests of Swerve Companies and gaining unfair advantages by misappropriating trade secrets, confidential and proprietary information.

**64.**

The unfair trade practices alleged in this Verified Complaint were knowingly committed by Defendants.

**65.**

The actions knowingly committed by the Defendants which are set forth in this Verified Complaint offend established public policy and are unethical, oppressive, unscrupulous, and substantially injurious to Swerve Companies.  The acts of Defendants complained of herein also violate the Louisiana Unfair Trade Practices and Consumer Protection Law because they involve deception, breaches of the agreements, and other unethical conduct.

**66.**

Plaintiffs bring this action pursuant to La. R.S. § 51:1409 as Plaintiffs have suffered an ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by Defendants of an unfair or deceptive method, act, or practice in violation of La. R.S. § 51:1405, may bring an action to recover actual damages.

**67.**

The Swerve Companies are entitled to reasonable attorney's fees and costs pursuant to La. R.S. 51:1409(A).

**68.**

Plaintiff will forward a copy of this Complaint to the Louisiana Attorney General, as required by La. R.S. 51:1409(B).

**69.**

The acts referenced above bind the Defendants identified in this cause of action jointly, severally, and solidarily.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract

**70.**

Swerve Companies incorporate each and every allegation contained in paragraphs 1 through 69 above as though fully set forth herein.

**71.**

Pursuant to the Act of Assignment and Capital Contribution and Business Transfer Agreement with Swerve IP, L.L.C. (Exhibit 2), Defendant Wilbert represented and warranted that she would not use or blend, in any way, any of the individual ingredients of Swerve$^{TM}$ brand sweeteners in order to create a product sufficiently similar to Swerve$^{TM}$ brand sweeteners as to compete with Swerve$^{TM}$ brand sweetener.

**72.**

Defendant Wilbert breached the Act of Assignment and Capital Contribution and Business Transfer Agreement with Swerve IP, L.L.C. by instructing the companies who blend Defendants' products to blend the constituents of Swerve™ sweetener, including the key constituents, into products marketed by the Wilbert Companies Defendants.

**73.**

Pursuant to the Product Supply Agreement between the Swerve Companies and Defendants Wilbert and the Wilbert Companies (Exhibit 5), the Defendants agreed that they are specifically prohibited from blending or using in any way, any of the individual ingredients of Swerve™ sweetener in order to create a product sufficiently similar to Swerve™ sweetener as to compete with Swerve™ sweetener.

**74.**

Pursuant to this same Product Supply Agreement (Exhibit 5), the Defendants also agreed to keep confidential and secret all Confidential Information concerning Swerve™, as described therein.

**75.**

Defendants Wilbert and the Wilbert Companies breached the Product Supply Agreement by instructing their blenders to use third-party suppliers to blend the constituents, including the key constituents, of Swerve™ sweetener into products marketed by the Wilbert Companies and by failing to keep secret all Confidential Information concerning Swerve™.

**76.**

Pursuant to the terms of her Confidentiality Non-Disclosure and Non-Use Agreements with Swerve IP, L.L.C. (Exhibit 6) and Swerve, L.L.C. (Exhibit 7), Defendant Wilbert agreed that she would not use in any nutritional or consumable product any formulation that mimics the Swerve[TM] sweetener formulation or its properties.

**77.**

Defendant Catherine Wilbert breached these Confidentiality Agreements by instructing blender(s) to use a formulation that mimics the Swerve[TM] sweetener in nutritional and consumable products marketed by the Wilbert Companies Defendants.

**78.**

Pursuant to the terms of the two Confidentiality Agreements with the Swerve Companies, Defendant Wilbert was contractually required to maintain and preserve as confidential, and not use or disclose, any confidential and proprietary information of Swerve Companies.

**79.**

Confidential and proprietary information includes all information relating to Swerve[TM] brand sweetener, any proprietary blend of ingredients used to formulate the brand sweetener Swerve[TM], trade secrets, and other information included in the definition of "confidential information" in the Confidentiality Agreements signed by the Defendant Wilbert.

**80.**

Pursuant to the terms of the Operating Agreements of Swerve IP, L.L.C. (Exhibit 8) and Swerve, L.L.C. (Exhibit 9), Defendant Wilbert agreed to keep confidential and not use or disclose to others any confidential information.

**81.**

Confidential information includes any data, documents or information in any form which pertains to these Operating Agreements and information of Swerve IP, L.L.C. and Swerve L.L.C. which the Manager of the Swerve Companies has designated as Confidential.

**82.**

Swerve Companies did not consent to the use by Defendants of any confidential or proprietary information or trade secrets.

**83.**

Defendant Wilbert breached the confidentiality provisions of the Confidentiality Agreements and Operating Agreements by:

(a) failing to regard and preserve as confidential all information pertaining to Swerve[TM] sweetener learned before and during the course of her membership in Swerve Companies;

(b) disclosing confidential information pertaining to Swerve[TM] sweetener learned before and during the course of her membership in Swerve Companies, to third parties, including but not limited to the Defendants' product blenders, without the consent of Swerve Companies;

(c) using for their own advantage, after Wilbert's termination from Swerve Companies, confidential information pertaining to Swerve$^{TM}$ sweetener Wilbert learned before and during the course of her membership in Swerve Companies, without the consent of Swerve Companies;

## 84.

As a direct and proximate result of the breaches of the Act of Assignment and Capital Contribution and Business Transfer Agreements, the Product Supply Agreement, the Operating Agreements and the Confidentiality Agreements by the Defendants, Swerve Companies have been, and continue to be, damaged.

## 85.

Unless restrained by this Court, Defendants will continue the acts complained of herein, all to Swerve Companies' irreparable harm.

## 86.

The acts referenced above bind the Defendants identified in this cause of action jointly, severally, and solidarily.

## SIXTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

**87.**

Swerve Companies incorporate each and every allegation contained in paragraphs 1 through 85 above as though fully set forth herein.

**88.**

Between February 14, 2011 and February 13, 2012, a fiduciary relationship existed between Defendant Wilbert and Swerve Companies as a result of Defendant's 10% membership in Swerve Companies.

**89.**

Pursuant to La. R.S. § 12:1314(A), Defendant Catherine Wilbert, as a result of her 10% membership in the Swerve Companies, both of at all pertinent times herein being limited liability companies, shall be deemed to stand in a fiduciary relationship to the Swerve Companies and its members and shall discharge her duties in good faith, with the diligence, care, judgment, and skill which an ordinary prudent person in a like position would exercise under similar circumstances.

**90.**

Pursuant to La. R.S. § 12:1314(B), Defendant Catherine Wilbert should be held personally liable to the Swerve Companies because the conduct committed by her, as described herein, should be considered acts of gross negligence or considered acts that are intentionally tortuous or an intentional breach of the duty of loyalty owed. "Gross negligence" is defined in

this Section, subpart (C), as a reckless disregard of or a carelessness amounting to indifference to the best interests of the limited liability company, in this case Swerve Companies, or its members.

**91.**

The conduct of Catherine Wilbert evidences a conflict of interest, has been informed the extent of the conflicts, and has no rational basis to continue to believe that the business judgments alleged herein were actually in the best interest of the Swerve Companies.

**92.**

Further, and also as a result of her 10% membership in Swerve Companies, until such membership terminated on February 13, 2012, Wilbert owed a fiduciary duty of loyalty and/or a duty of fidelity to Swerve Companies:

(1)   To act only in the best interests of Swerve Companies, and not in her own best interests;

(2)   to not acquire any interest in an entity in competition with Swerve Companies; and

(3)   to not use any information that she may have acquired by reason of her membership in Swerve Companies for the purpose of engaging in a course of conduct in opposition to Swerve Companies' best interest.

Defendant Wilbert breached these duties owed to Swerve Companies by misappropriating, for her own benefit, Swerve Companies' confidential and proprietary business information and trade secrets, as set forth in this Verified Complaint.

**93.**

As a direct and proximate result of the breaches of fiduciary duty and/or duty of fidelity by Defendant Wilbert, Swerve Companies have incurred and continue to incur damages in an amount to be proven at trial.

**94.**

The breaches of fiduciary duty and/or duty of fidelity by Defendant Wilbert discussed herein were intentional, malicious, reckless and with no regard for the rights and interests of Swerve Companies.

## SEVENTH CLAIM FOR RELIEF

### Sequestration

**95.**

Swerve Companies incorporate each and every allegation contained in paragraphs 1 through 94 above as though fully set forth herein.

**96.**

Swerve Companies seek a writ of sequestration pursuant to Rule 64 of the Federal Rules of Civil Procedure, which allows state law remedies, including sequestration, according to the law of the state in which the District Court resides.  Accordingly, a writ of sequestration is sought pursuant to La. Code of Civ. Proc. arts. 3501 *et seq.* and 3571 *et seq.*

**97.**

Swerve Companies expressly claim ownership or right to possession of property made the subject of this litigation and further assert that it is within the power of the Defendants to conceal, dispose of or waste the property or remove the property from this jurisdiction during the pendency of this litigation.  Accordingly, Swerve Companies seeks to have the property seized under a writ of sequestration during the pendency of this litigation.

**98.**

Upon information and belief, Defendants are in possession of some or all of the following, which are the confidential and proprietary property of Swerve Companies:

(a) Products containing the principal constituents or key ingredients of Swerve[TM] sweetener;

(b) formulation information concerning the production of Swerve[TM] sweeteners and products almost identical to Swerve[TM] sweetener.

**99.**

Defendants have no rights to own Swerve[TM] and the products containing Swerve[TM]. Further, Defendants have the power to conceal or dispose of said property or remove the property from this jurisdiction during the pendency of this litigation.

**100.**

Swerve Companies shall furnish the appropriate security as deemed necessary by this Court, although it is respectfully urged that no security be required as the material sought to be sequestered belongs solely to Swerve Companies.

**101.**

The acts referenced above bind the Defendants identified in this cause of action jointly, severally, and solidarily.

## EIGHTH CLAIM FOR RELIEF

### Specific Performance

**102.**

Swerve Companies incorporate each and every allegation contained in paragraphs 1 through 101 above as though fully set forth herein.

**103.**

Pursuant to the terms of the Product Supply Agreement, Defendants Wilbert and the Wilbert Companies were required to preserve and maintain as confidential the information about Swerve$^{TM}$ sweetener and these Defendants were prohibited from blending any of the ingredients of Swerve$^{TM}$ sweetener in order to create a product similar to Swerve$^{TM}$ sweetener.

**104.**

Pursuant to the Act of Assignment and Capital Contribution and Business Transfer Agreements, the Operating Agreements, and the Confidentiality Agreements, Defendant Wilbert was required to preserve and maintain as confidential the information about Swerve$^{TM}$ sweetener and to not blend the individual ingredients of Swerve$^{TM}$ sweetener in order to create a product similar to Swerve$^{TM}$ sweetener.

**105.**

As set forth in this Verified Complaint, Defendants breached the confidentiality and blending provisions of their Confidentiality Agreements with the Swerve Companies.

**106.**

As a direct and proximate result of the failure of the Defendants to maintain and preserve the confidential information concerning Swerve™ and as a result of the Wilbert Companies Defendants blending the constituents of Swerve™ sweetener into products marketed by the Wilbert Companies, Swerve Companies have been, and continue to be, damaged.

**107.**

The Defendants continue to use and or/will inevitably use for their own benefit, and for the use and benefit of third parties, Swerve Companies' confidential business information without the written consent of Swerve Companies or other legal authority to do so.

**108.**

The utilization and/or inevitable utilization by the Defendants for their own and others' benefit of the confidential information concerning Swerve™ has or may have damaged Swerve Companies' customer relations and the good will with its customers that Swerve Companies have developed.  Consequently, Swerve Companies' remedies are inadequate.

**109.**

Unless ordered to honor the provisions of the Agreements cited above, to return to Swerve Companies all confidential and proprietary information and property, to remove all references to Swerve™ on the websites of the Defendants, and to stop blending the constituents

of Swerve[TM] sweetener into the products of the Wilbert Companies, these Defendants will continue the acts complained of herein, all to Swerve Companies' irreparable harm.

**110.**

The acts referenced above bind the Defendants identified in this cause of action jointly, severally, and solidarily.

## NINTH CLAIM FOR RELIEF

### Injunctive Relief

**111.**

Swerve Companies incorporate each and every allegation contained in paragraphs 1 through 110 above as though fully set forth herein.

**112.**

Swerve Companies are entitled to injunctive relief initially as a preliminary injunction and then permanent injunction for the reasons outlined in the paragraphs below.

**113.**

The unlawful actions of the Defendants are in direct violation of the Federal Trademark Act, the Confidentiality Agreements, and the Uniform Trade Secrets Act, the violation of which affords to Swerve Companies injunctive relief, without the need to prove irreparable harm.

**114.**

Swerve Companies aver that there exists a substantial likelihood that it will prevail on the merits seeking the injunctive relief, that it will suffer irreparable injury unless the injunction

issues, that the injury by these unlawful acts perpetrated by the Defendants greatly outweighs any damage to the Defendants which could be caused by the issuance of this injunction, and that if the injunction is issued it would not be adverse to the public interest.   Additionally, Swerve Companies will be irreparably harmed in the event that this injunction is not issued, which harm cannot be adequately recompensed in damages.

### 115.

The business in which Swerve Companies are engaged is extremely competitive.  Swerve Companies are understandably very secretive and confidential in their business matters and have created, perfected and utilized products, processes and formulations which must be safeguarded to protect their own business interests.  All of these items are owned solely and exclusively by Swerve Companies and have been used without Swerve Companies' consent, knowledge or authorization, unlawfully by the Defendants for their own personal gain.

### 116.

Due to the confidential and proprietary nature of the information, the terms of the Louisiana Trade Secrets Act, and the inevitability that this confidential and proprietary information can be used to unfairly compete against Swerve Companies, Swerve Companies are entitled to an injunction against Defendants preventing them from advertising and selling Swerve$^{TM}$ sweetener and from blending sweeteners similar to Swerve$^{TM}$ sweetener into the Defendants' products.

**117.**

Should Defendants not be enjoined from continuing to advertise and sell Swerve[TM] sweeteners and to blend sweeteners similar to Swerve[TM] sweeteners into the Defendants' products, Swerve Companies will be irreparably damaged without lawful cause.

**118.**

Swerve Companies are additionally entitled to injunctive relief by virtue of the execution of the Confidentiality Agreements and other agreements executed by Defendant  Wilbert, which provide, in pertinent part, for requirements of confidentiality and non-disclosure which have been egregiously and blatantly breached, and permit injunctive relief without proof of irreparable harm.

**119.**

The purpose of the confidentiality provisions of these Agreements is to prevent exactly what Defendants did in this case, namely to misappropriate trade secrets owned solely and exclusively by Swerve Companies so as to unfairly compete against Swerve Companies in a highly competitive business.

**120.**

Swerve Companies have the right to request and demand specific performance of these agreements in the form of an injunction pursuant to Louisiana Civil Code art. 1986 which provides, in pertinent part that:

> "Upon an obligor's failure to…or not to do an act, … the court shall grant specific performance plus damages for delay if the obligee so demands."

**121.**

Defendants Catherine Wilbert and the Wilbert Companies breached these Agreements by failing to do an act contained therein, i.e., honoring the confidentiality restrictions.  Due to this breach and the right of Swerve Companies to obtain specific performance, Swerve Companies are entitled to injunctive relief pursuant to Louisiana Civil Code art. 1987.

**122.**

Swerve Companies aver that this injunctive relief is warranted and, as a matter of law, no showing of irreparable injury is necessary to obtain injunctive relief through specific performance, as all other requisite elements for injunctive relief have been met.

**123.**

Swerve Companies respectfully aver that due to the blatant violations of the Uniform Trade Secrets Act, particularly relating to the misappropriation of information owned by Swerve Companies, no security should be owed by Swerve Companies.

**124.**

In the alternative, Swerve Companies shall submit security as required by this Court.

**125.**

The threatened injury to the Swerve Companies outweighs the potential harm to Defendants from granting the injunction.

**126.**

Swerve Companies will submit to this Court seeking the aforesaid described as a rule to show cause why the relief should not be granted on a preliminary injunction basis.

**127.**

The acts referenced above bind the Defendants identified in this cause of action jointly, severally, and solidarily.

WHEREFORE, Swerve Companies pray that after due proceedings had, there be judgment in their favor and against the Defendants under the following specific causes of action:

(1)     Against Defendants jointly, severally and solidarily for all remedies under the Federal Trademark Law of 1946, as amended;

(2)     Against Defendants jointly, severally, and solidarily for all damages under the Louisiana Unfair Trade Secrets Act including but not limited to reasonable attorneys' fees;

(3)     Against Defendants jointly, severally, and solidarily, under the Louisiana Unfair Trade Practices Act for all damages including but not limited to treble damages, all compensatory, incidental, consequential damages in an amount to be proven at trial and attorneys' fees;

(4)     Against all Defendants, for all damages including but not limited to all compensatory, incidental and consequential damages in an amount to be proven at trial, based on their breaches of contract;

(5)     Against all Defendants for all other damages which are reasonable in the premises not specifically prayed for above;

(6)     For an order for a writ of sequestration issued according to law directing the United States Marshall to seize and hold, during the pendency of this litigation, the following described property held by the Defendants:

> Any and all commercially sensitive, proprietary and confidential materials and documents of Swerve Companies, any and all Swerve Companies products, and any and all products containing Swerve$^{TM}$ sweetener ingredients;

(7)     Against Defendants ordering said Defendants to specifically perform under the terms of their Agreements between Catherine Wilbert and the Plaintiffs;

(8)     For orders of injunctive relief issued according to law, following a rule to show cause against Defendants jointly, severally, and solidarily for a preliminary injunction and thereafter a permanent injunction enjoining Defendants, and their officers, agents, servants, employees and attorneys, and all persons in active concert, privy or participation with any of the foregoing persons or entities, from conducting business or performing any services using proprietary information, trade secrets, and/or other materials taken from or in any way owned, controlled or belonging to Swerve Companies, contacting or contracting with former or present Swerve Companies' customers, advertising Swerve$^{TM}$ sweetener on websites and in promotional materials, selling Swerve$^{TM}$ sweetener, and blending or using Swerve$^{TM}$ sweetener ingredients in any product sold by the Defendants;

(9)     All costs of these proceedings;

(10)    Legal interest on all sums due at the rate allowable by law from the date of default of all obligations breached and for all other claims from the date of judicial demand; and

(11)    Granting such other relief as the Court may deem just and appropriate under the circumstances.

The Swerve Companies hereby demand a jury on all claims for which is jury is available under the law.

Respectfully submitted:


/s/Michele D. Allen-Hart_____
Michele D. Allen-Hart, La. Bar No. 25332
Yvette A. D'Aunoy, La. Bar No. 22761
Hal D. Unger, La. Bar No. 31344
MIDDLEBERG, RIDDLE & GIANNA
201 St. Charles Ave., 31st Floor
New Orleans, Louisiana  70170
Telephone: (504) 525-7200
Facsimile: (504) 581-5983

**ATTORNEYS FOR SWERVE IP, L.L.C. AND SWERVE, L.L.C.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing pleading has been served upon the parties receiving electronic service notification via the Court's CM/ECF System and Non-CM/ECF participants via U.S. Mail on this 8th day of May, 2013.

*/s/Michele D. Allen-Hart*

MICHELE D. ALLEN-HART